UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TAMARA ROSADO,                                              :

                                                                          Case No. 17 Civ. 5920 (VSB)(HBP)

                                    Plaintiff,              :


        - against -                                        :


ENHANCED RECOVERY CORPORATION,                             :


                                    Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## ENHANCED RECOVERY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

SMITH, GAMBRELL & RUSSELL, LLP

Nicole Haff
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800

and

Scott S. Gallagher
50 North Laura St., Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6111
Fax: (904) 598-6211
sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant*

## TABLE OF CONTENTS

I.    **Introduction**................................................................................................1

       a. Issues before the Court ........................................................................1

       b. Legal Standard ....................................................................................2

II.   **The Court is empowered to award ERC its attorneys' fees for defending actions initiated in bad faith and without legal or factual support** ....................2

III.  **Ms. Rosado's claims against ERC were brought without any support in fact or law** .................................................................................................5

IV.  **This Court should sanction Ms. Rosado, or her counsel, or both, because this matter was filed against ERC in bad faith and for the purposes of harassment**.....................................................................................8

    a. Ms. Rosado's actions in this matter reveal that she had no interest in pursuing this litigation...........................................................................8

    b. The connection between Plaintiff's law firm and Ms. Frazier demonstrates the bad faith in this litigation......................................................................11

    c. The history of the claims brought by multiple plaintiffs represented by Ms. Rosado's counsel further underscore the bad faith in instituting the instant litigation ........................................................................17

        i. Claims filed against ERC................................................................17

        ii. Claims filed against other collectors................................................21

V.   **This Court should hold an evidentiary hearing and require the attendance of Ms. Rosado, Ms. Frazier, Mr. Geller, and Mr. Rephen**..................................22

VI.  **Conclusion** ................................................................................................24

# **TABLE OF AUTHORITIES**

## Cases

*Alcivar v. Enhanced Recovery Company, LLC*, No 1:17-cv-2275 (E.D.N.Y.
　　Aug 23, 2018) ............................................................................................ 14, 17, 19

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)........................................................... 16, 23

*Borbon v. Enhanced Recovery Company, LLC*, No. 000960 (N.Y. Civ. Ct. Bronx Cnty.).......... 17

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)............................................................... 3

*Compare Paul v. Credit Control Servs.*, No. 2:17-cv-4060, (E.D.N.Y. June 25, 2018) .............. 10

*Eisner v. Enhanced Recovery Company, LLC*, No. 1:17-cv-1240 (E.D.N.Y. Aug. 17, 2018)
　　.......................................................................................................................... passim

*Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012) ...................................... 4

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402 (E.D.N.Y. 2012)............................ 7

*Haynes v. Enhanced Recovery Company, LLC*, 1:16-cv-02971-DLI-RLM (E.D.N.Y.) .............. 17

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir. 2018)................................ 2, 4, 5, 7

*Ignacio v. Enhanced Recovery Company, LLC*, 1:17-cv-05833-WFK-SMG (E.D.N.Y.)............ 17

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109 (2d Cir. 2000) ...................................... 4

*Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir. 1989)................................ 2, 24

*Kerin v. U.S. Postal Serv.*, 218 F.3d 185 (2d Cir. 2000) ...................................................... 5

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) .......................................................................... 4

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ............................................................ 7

*Li-Butti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997).................................................. 16, 23

*Mahmud v. Enhanced Recovery Company, LLC*, 1:17-cv-03638ILG-VMS (E.D.N.Y.) ............. 17

*Marx v. Gen. Rev. Corp.*, 133 S. Ct. 1166 (2013)........................................................... 4

*Moreno v. Enhanced Recovery Company, LLC*, 1:17-cv-04590-WFK-SJB (E.D.N.Y.) ............. 17

*Paul v. Credit Collection Servs.*, No. 2:17-cv-4060-SJF-AYS Dkt. 21 (E.D.N.Y. Mar. 2, 2018)................................................................................................................... 21

*Perez v. Enhanced Recovery Company, LLC*, No. 06988 (N.Y. Civ. Ct. N.Y. Cnty.)................ 17

*S.E.C. v. Suman*, 684 F. Supp. 2d 378, 386 (S.D.N.Y 2010)..................................................... 16, 23

*Sandoval v. I.C. Sys.*, No. 17-CV-3755(DLI)(ST), 2018 WL 1582218 (E.D.N.Y. Mar. 29, 2018)............................................................................................................. 7, 8

*Ullah v. Enhanced Recovery Company, LLC*, 1:17-cv-04876-KAM-VMS (E.D.N.Y.) .............. 17

*United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & helpers of Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991)............................................................................................. 4

*Vernot v. Pinnacle Credit Servs., LLC*, No. 16-CV-3163 (JFB)(SIL), 2017 WL 384327 (E.D.N.Y. Jan. 26, 2017) ....................................................................................................... 7, 8

*Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110 (2d Cir. 2017)............................. 2

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009)................................. 3

**Statutes**

15 U.S.C. § 1692 *et seq.*................................................................................................................. 1

28 U.S.C. § 1927............................................................................................................................. 3, 4

**Rules**

Fed. R. Civ. P. 11(b) ...................................................................................................................... 3

Fed. R. Civ. P. 36(a)(3)................................................................................................................... 8

I. **Introduction**

    a. **Issues before the Court**

M. Harvey Rephen & Associates, P.C. (the "Rephen Firm"), acting directly and through its "of counsel" relationship with Ed Geller, and purporting to act on behalf of Tamara Rosado, asserted claims against Enhanced Recovery Company, LLC ("ERC") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "Act"), alleging ERC failed to give effect to an oral dispute and made misrepresentations to a third party, Tawanda Frazier. In the complaint, the Rephen Firm asserted a claim for $25,000 in actual damages, but produced absolutely no evidence of any such damages. The evidence did, however, demonstrate that ERC properly accepted the Plaintiff's dispute, that ERC made no such misrepresentations, and that the claims were not supported by any legal authority. When ERC sought deposition testimony from Ms. Rosado, the Rephen Firm was unable, or unwilling, to produce her and, offered to dismiss her claims, with prejudice, if ERC would not seek to recover its fees and costs incurred in defending this action.

Additionally, the Rephen Firm has filed a number of matters against ERC, and other collectors, based on spurious allegations of technical violations premised on alleged collector missteps in response to questions posed by purported credit repair professionals, like Ms. Frazier, on behalf of various plaintiffs. In many of these cases, as here, once the defendant seeks discovery from the plaintiff, the firm cannot produce the plaintiff and offers to dismiss the claims, with prejudice, if the collector will not seek to recover its fees for defending the meritless action.

To date, ERC has incurred approximately $20,000 in attorneys' fees and costs in defending this frivolous suit,[1] as well as an additional $90,000 defending two other such matters filed by the Rephen Firm. ERC seeks to recover the entirety of the fees and costs incurred in this matter, as the evidence demonstrates that Ms. Rosado, her counsel, or both, filed this action in bad faith, without any colorable basis for prevailing in this matter if it were tried to its conclusion, rather than quickly settled to avoid defense costs.

### b. Legal Standard

An award of sanctions is reviewed for an abuse of discretion. *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018); *Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017). If a court sanctions a litigant for bad faith and outlines its factual findings with a high degree of specificity, then its order will not be set aside unless the court misapplies the law, clearly assesses the evidence erroneously, or decides the motion unreasonably. *Huebner*, 897 F.3d at 53. The Second Circuit recognizes that the trial court is in the best position to apply the fact-dependent legal standard that informs the decision as to whether sanctions are appropriate. *Id.* (*citing Virginia Properties*, 865 F.3d at 113).

While an evidentiary hearing is not required for a court to impose sanctions, it is appropriate to hold an evidentiary hearing where there are disputed facts or issues of credibility. *See Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989).

### II. The Court is empowered to award ERC its attorneys' fees for defending actions initiated in bad faith and without legal or factual support.

ERC should recover its attorneys' fees and costs incurred in defending this action because the action was not supported in fact or law, and because it was likely instituted by counsel without Ms. Rosado providing her informed consent to file this action on her behalf.

---

[1] *See* Declaration of Scott Gallagher dated September 7, 2018, filed in support hereof [hereinafter Gallagher Decl.] at ¶ 24.

Moreover, this action is one of several matters instituted by Ms. Rosado's lawyers under similar circumstances based on calls initiated by persons with a direct financial stake in manufacturing claims for Ms. Rosado's counsel under the Act.

Rule 11 states the proponent of a pleading filed with the court certifies he or she has inquired into the basis for the filing and that it is not being presented for an improper purpose, that the legal contentions are warranted, and that the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). If this certification is false, the court may sanction the filer and his or her firm. *Id.*

Additionally, if the court finds that an action is filed in bad faith, the court may award sanctions without relying on Rule 11. The court has the inherent power to award attorneys' fees to litigants to sanction adversaries who have acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The court may properly impose sanctions under its inherent authority "if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). "Conduct is entirely without color when it lacks any legal or factual basis[.]" *Id. See also Chambers*, 501 U.S. at 46 (holding that such sanctions "vindicat[e] judicial authority without resort to the more drastic sanctions available for contempt of court").

A court may sanction an attorney and his firm under 28 U.S.C. § 1927. Section 1927 provides a mechanism to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "This section 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics,' and provides

courts with a cudgel to use, in their discretion, 'to deter unnecessary delays in litigation.' " *Huebner*, 897 F.3d at 55 (*quoting United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). The court may sanction a law firm under section 1927 for the acts of its attorneys. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147-48 (2d Cir. 2012).

A court properly imposes sanctions under section 1927 when it finds the offending party's claims are without color and were brought in bad faith or motivated by improper purpose. *Huebner*, 897 F.3d at 55 (*citing Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)). An inference of bad faith is warranted when a party undertakes "frivolous actions that are 'completely without merit' " *Id.* (*quoting In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)).

The Act itself also provides a mechanism to deter frivolous litigation. Section 1692k(a)(3) of the Act permits a court to sanction a litigant for bringing suit under the Act "in bad faith and for the purpose of harassment." 15 U.S.C. §1692k(a)(3). The Supreme Court recognized this provision codifies the court's inherent powers, but does not limit or disturb them. *Marx v. Gen. Rev. Corp.*, 133 S. Ct. 1166, 1175-76 (2013). The Second Circuit recently affirmed an award of sanctions against a litigant premised on sections 1692k(a)(3), 1927 and the court's inherent authority in an action similar to the instant case. *See Huebner*, 897 F.3d at 56-57.

In *Huebner*, the plaintiff, an attorney who practices in consumer protection, initiated a phone call to a collector and secretly recorded the call. *Id.* at 45-47. The plaintiff inquired how he could dispute the account and have it removed from his credit report. When the collector responded to his questions and asked for the nature of the dispute, the caller was unresponsive and mischaracterized the representative's statements in further questions. *Id.* at 47. The collector marked the account as disputed and sent a request to the credit bureaus to delete its reporting of

the account. It also sent a letter informing the plaintiff that it would no longer seek to collect the account and that it had informed the credit bureaus to delete its reporting of the account. *Id.*

The plaintiff brought suit under the Act, claiming the collector stated he could not orally dispute the debt and must send a written dispute supported by a valid reason. After finding the call recording did not reflect the allegations of the complaint, the District Court entered an order to show cause why the case should not be dismissed with fees and costs awarded under section 1692k(a)(3) and additional sanctions imposed under Rule 11. *Id.* at 48.

After allowing the plaintiff to amend the complaint to allege new theories of liability, the court ultimately entered summary judgment for the collector finding it permissible to ask questions about the nature of a consumer's dispute. Additionally, the court sanctioned both the plaintiff and his counsel for their bad faith in instituting and maintaining the lawsuit. The court found that the caller "had been purposefully evasive during the call in an effort to provoke an FDCPA violation," based on an admission that the caller initiated the call to "test" the collector's compliance. *Id.* at 57. The Second Circuit held that this was a permissible finding and that the lower court did not abuse its discretion to find that the caller's decision to initiate the lawsuit " 'was meritless and brought for improper purposes,' and that a fee award was therefore appropriate." *Id.* (*quoting Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 195 (2d Cir. 2000)).

Accordingly, where, as here, a person initiates a call to a collector in an attempt to trick the collector into a verbal misstep for the person's own financial gain, sanctions are appropriately awarded against the plaintiff and his or her attorneys for initiating the claim in bad faith and for the purposes of harassment.

**III.    Ms. Rosado's claims against ERC were brought without any support in fact or law.**

On March 30, 2017, Tawanda Frazier called ERC on behalf of Ms. Rosado. During the call Ms. Frazier asked whether there were any interest or fees being collected on the account. Ms. Frazier then asked if ERC would accept a verbal dispute or if a dispute would have to be submitted in writing. Ms. Frazier testified in deposition that she was instructed to ask these questions of collectors and that if the collector answered that there were interest or fees added, or if the collector stated to send the dispute in writing, then it was a violation of the Act. Frazier Depo. at 22:22-24:2, 39:14-42:3.[2]

On May 4, 2017, the Rephen Firm filed Ms. Rosado's claim against ERC. In the complaint, Ms. Rosado alleged that ERC failed to give effect to Ms. Rosado's dispute and reported the account to the credit bureaus without indicating the account was disputed. *See* Compl. (DE 4-1 at 3-7). The complaint sought $25,000 in damages purportedly caused by ERC's conduct.

ERC's records, however, disclose there is no merit to Ms. Rosado's claims. On March 30, during the call, ERC's representative marked the account as disputed and notated the account notes with the reason for the dispute, "incorrect am[oun]t." Def.'s Resp. to Pl.'s Interr. Nos. 9, 13;[3] Davis Decl. at ¶ 7-8, Exh. A. The next day, ERC sent a letter to Ms. Rosado, stating the account had been placed in a hold status and that collection efforts had ceased as a result of the March 30 phone call. Davis Decl. at ¶ 9, Exh. B. On April 2, ERC submitted a request to each of the credit bureaus instructing them to delete ERC's reporting on the subject account. *Id.* at ¶ 11; Def.'s Resp. to Pl.'s Interr. Nos. 9-10.

Additionally, there is no legal basis for imposing liability against ERC under the Act for any representations made to Ms. Frazier. The Complaint alleges ERC stated during the call that any dispute had to be in writing. As an initial matter, that allegation is false. Moreover, even if

---

[2] A true and correct transcript of the deposition of Tawanda Frazier is attached to the declaration of Scott Gallagher as Exhibit C.

[3] ERC's responses to Plaintiff's interrogatories are attached to the declaration of Scott Gallagher as Exhibit B.

ERC's representative had misspoken in response to Ms. Frazier's questions, such would not be actionable under the Act. In *Huebner*, the Second Circuit affirmed summary judgment for a collector finding it is permissible to ask questions of a caller concerning the nature of a dispute and that there was no basis for finding that the collector reported the account without reporting it was disputed. *Huebner*, 897 F.3d at 51-52.[4] Moreover, the court affirmed sanctions on the basis that the claim asserted was legally and factually frivolous. *Id.* at 55-56.

Additionally, claims under the Act cannot be premised on representations made to third-parties providing services to a consumer. *See, e.g., Sandoval v. I.C. Sys.*, No. 17-CV-3755(DLI)(ST), 2018 WL 1582218, at *3 (E.D.N.Y. Mar. 29, 2018). In *Sandoval*—a claim filed by the Rephen Firm based on a call similar to the one at issue here—Chief Judge Irizarry held that any claims of misrepresentation were barred because the call was not initiated by the collector, reasoning "[c]ourts in this circuit have held that the [Act's] protections are not triggered by communications by someone other than the debt collector." *Id.* (*citing Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 411 (E.D.N.Y. 2012)). Additionally, the court held that the Act does not cover purported misrepresentations made to persons acting as intermediaries between collectors and consumers. *Id.* (*citing Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002)). *See also Vernot v. Pinnacle Credit Servs., LLC*, No. 16-CV-3163 (JFB)(SIL), 2017 WL 384327 (E.D.N.Y. Jan. 26, 2017) (dismissing claim filed by Mr. Geller concerning call initiated by credit repair specialist to a collector and finding that the Act does not apply to representations made to intermediaries).

The *Vernot* opinion, as well as the cases on which it relies, were entered before Ms. Rosado filed her claim against ERC. Moreover, as Ms. Rosado's counsel also represented the plaintiffs

---

[4] *See also* 15 U.S.C. § 1692g(b) (requiring written dispute to trigger certain protections under the Act).

in *Vernot* and *Sandoval*, it is clear the Rephen Firm should have been aware that the basis for the claims was ill founded from the beginning, yet pursued this action for eleven months.[5]

**IV.  This Court should sanction Ms. Rosado, or her counsel, or both, because this matter was filed against ERC in bad faith and for the purposes of harassment.**

**a.  Ms. Rosado's actions in this matter reveal that she had no interest in pursuing this litigation.**

Mr. Geller, acting as "of counsel" to the Rephen Firm, filed this claim on behalf of Ms. Rosado on May 4, 2017, thirty-four days following the call at issue in this matter. Compl. (DE 1-1) at ¶¶ 10-12. In the Complaint, Mr. Geller, not Ms. Rosado, affirmed that the complaint was true to his knowledge and that the documents on which the claims were based were in his possession. *Id.* at 7. ERC served Ms. Rosado with requests for admissions and requests for production on December 1, 2017. Thereafter, Mr. Geller requested an extension to respond to the discovery requests through and including January 13, 2018 and ERC consented to the extension. Ms. Rosado did not provide any responses to ERC's discovery requests by January 13. As a result, each of the requests for admissions are deemed admitted.[6]

Thereafter, ERC received responses to its requests for production from Ms. Rosado's counsel. These responses, however, did not include any documents that Mr. Geller did not purport to have at the outset of this matter. Although ERC requested a total of twenty-three categories of documents, it received a total of two documents from Ms. Rosado: a one-page printout from creditkarma.com and the recording of the call between Ms. Frazier and ERC. *See* Gallagher Decl. at ¶ 5. Notably, although the Complaint alleges that Ms. Rosado sought representation for credit assistance from Ms. Frazier, the discovery responses state that she has no documents reflecting any such agreement or communications between her and Ms. Frazier.

---

[5] Additionally, ERC asserted as an affirmative defense in this matter that any purported misrepresentations were immaterial and made to an intermediary further notifying counsel of deficiencies in the claims. *See* Def.'s Ans. at 4.
[6] Fed. R. Civ. P. 36(a)(3).

Compare Compl. (DE1-1) at ¶ 10 *with* Pl.'s Resp. to Req. for Prod. Nos. 4, 16-17.[7] Likewise, although the complaint alleges Ms. Rosado disputed the balance of her T-Mobile account that ERC sought to collect, the discovery responses state that she has no documents to support the factual basis for that dispute, other than Ms. Frazier's telephone call to ERC. Compare Compl. (DE1-1) at ¶ 15 *with* Pl.'s Resp. to Req. for Prod. Nos. 6, 8, 11-14. Finally, although Ms. Rosado claimed $25,000 in actual damages, she admits that she suffered no actual damage and she has no documents to demonstrate any such damages. Compare Compl. (DE1-1) at 4 *with* Pl.'s Resp. to Req. for Prod. Nos. 5, 14-15, 19; Pl.'s Resp. to Req. for Admis. No. 1.

ERC sought dates from Ms. Rosado's counsel on which she would be available to be deposed prior to the Court's deadline of January 31. On December 8, Mr. Geller indicated that Ms. Rosado and a plaintiff in another matter filed by the Rephen Firm against ERC, Ramon Ignacio, were both available to be deposed on the dates of January 26, 29 and 31. Gallagher Decl. at ¶ 6. When ERC sought to confirm a date and set Ms. Rosado's deposition, however, Mr. Geller was unable to confirm any date on which she would be available for deposition. *Id.* Consequently, ERC sought, with Mr. Geller's consent, an extension of the discovery period to permit additional time to find an agreeable date to depose Ms. Rosado, which this Court granted. *See* Mot. for Ext. (DE 14); Order (DE 15).

On April 12, Mr. Geller offered to dismiss Ms. Rosado's claims, with prejudice, as well as a claim brought on behalf of another plaintiff against ERC, Imelda Alcivar, if ERC would waive any claim for fees or costs incurred in these matters. Gallagher Decl. at ¶ 8. ERC declined the offer and again requested dates on which Ms. Rosado would be available for deposition. On April 30, Mr. Geller affirmatively stated "I am writing to advise you that neither Ms. Rosado nor Ms. Alcivar will appear for a deposition." *Id.* at ¶ 9.

---

[7] Plaintiff's belated discovery responses are attached to the declaration of Scott Gallagher as Exhibit A.

In short, at no point during the prosecution of Ms. Rosado's claims, has she had anything to do with this litigation. Ms. Rosado did not review the allegations of the complaint, rather it was filed based on documents in Mr. Geller's possession.[8] Moreover, although Mr. Geller swore under penalty of perjury that he believed that Ms. Rosado had a valid dispute of her account with T-Mobile, had suffered $25,000 in actual damages, and had received credit repair services from Ms. Frazier, he was unable to obtain any documents from Ms. Rosado to support these allegations. Finally, Ms. Rosado, or her counsel, offered to dismiss her claims, with prejudice rather than appear for deposition, and when that offer was declined, flatly refused to appear for deposition. All of these facts support the conclusion that either Ms. Rosado had no interest in actually pursuing this action or that the Rephen Firm was unwilling or unable to get in contact with Ms. Rosado during this matter, yet pushed the matter for a full eleven months before offering to dismiss.

In fact, the form retainer agreement used by the Rephen Firm contemplates that persons it represents need not participate in the litigation process. Two substantially identical retainer agreements for the Rephen Firm have been filed in the public record. *Compare Paul v. Credit Control Servs.*, No. 2:17-cv-4060, Dkt. 30 at p. 9 (E.D.N.Y. June 25, 2018) *with Eisner v. Enhanced Recovery Company, LLC*, No. 1:17-cv-1240, Dkt. 36-1 at p. 48 (E.D.N.Y. Aug. 17, 2018).[9] These form retainer agreements authorize the Rephen Firm to negotiate settlement of the client's claim without input from the client. Further, the agreement gives the firm a right to recover 50% of any actual or punitive damages in a case and limits the client's recovery to $500 (out of a potential $1,000) of statutory damages. Moreover, the agreement permits the Rephen Firm to negotiate the portion of any settlement attributable to attorneys' fees—of which the

---

[8] These documents are believed to have been provided to Mr. Geller through the third-party, Ms. Frazier, who initiated the call to ERC and who, as discussed below, has a financial connection to the Rephen Firm.
[9] A true and correct copy of the retainer agreements is attached hereto as Composite Exhibit A.

Rephen Firm retains the entirety—as if the matter had been fully litigated through trial. This allows the firm to claim that the lion's share of a settlement is for attorneys' fees even where, as here, the firm filed a complaint alleging its client suffered $25,000 in actual damages.

And while the last clause of the agreement instructs the client to save communications with collectors to be used as evidence, it does not appear this obligation is explained to the client. While the clause includes a place for the client to initial, neither of the two record agreements have been initialed. Further, as discussed below, when Ms. Alcivar signed her agreement, she was not even aware of the content of the agreement, but rather thought that it was an agreement to permit Tawanda Frazier to access her credit report and repair her credit. In fact, Ms. Alcivar was not even aware that a lawsuit had been filed on her behalf until after the Rephen Firm offered to dismiss her claims, with prejudice, without her consent. [10]

### b. The connection between Plaintiff's law firm and Ms. Frazier demonstrates the bad faith in this litigation.

As discussed more thoroughly throughout, this is just one of several matters the Rephen Firm has filed against ERC alleging ERC made a misrepresentation to a credit repair representative on a phone call initiated by the specialist. In many of these matters, the credit repair representative has been Tawanda Frazier, as was true in the case before the Court.

In one of these matters, ERC was successful in deposing Ms. Frazier, as well as the plaintiff, Bradley Eisner. During her deposition, Ms. Frazier testified she previously worked for S&W Protection and Management, Inc. ("S&W"), and was trained there to make calls to creditors and collectors using a call script. *See* Frazier Depo. at 18-24. She testified that she disputed 100% of accounts in collection. *Id.* at 26:3-:20, 29:8-:16. She testified that the Rephen Firm had a connection with S&W and that S&W employees were trained to secretly record all

---

[10] *See* Discussion, Part IV.c.i, *infra.*

telephone calls, such that S&W would send any recordings, where she or other employees believed they were successful in baiting collection agents into a misstep, to attorneys, including the Rephen Firm, using a template email and attaching the recording. *Id.* at 34:11-39:7. Ms. Frazier testified that when she was involved in a call that resulted in a perceived violation of the Act, Ms. Frazier would receive a cash bonus from S&W of about $100. *Id.* at 164:24-165:16. She further testified that S&W received some payment for sending over the purported violation. *Id.* at 165:12-:14.

Since Ms. Frazier has left the employ of S&W, she has continued to use the script she learned there. *Id.* at 67:1-:15. She continued to record the telephone calls and, if she thought she heard a violation, she sent the recording to the Rephen Firm. *Id.* at 156:25-157:23. Additionally, Ms. Frazier confirmed that the copy of Mr. Eisner's credit report from Creditkarma.com produced in that matter[11] was provided to the Rephen Firm by Ms. Frazier. *Id.* at 79:10-80:4. Although she swore in deposition not to have received any direct compensation from the Rephen Firm since she left S&W, or any compensation whatsoever for helping the plaintiffs in these matters, the evidence demonstrates the Rephen Firm has compensated Ms. Frazier and that Ms. Frazier has obtained a financial interest in claims asserted by these plaintiffs.

Most notably, emails produced by the Rephen Firm in response to a subpoena issued in the *Eisner* matter demonstrate direct payments by the firm to Ms. Frazier. On December 12, 2016, Mr. Rephen wrote to Ms. Frazier advising:

> Wanda, the check came in…it is your first check… I am covering your salary…$1540… until you are able to make the same. You are supposed to get $690 on this case…which balances the salary…when you pass $1540 I start to send you additional income…I just paid you last week. I think you will soon be independent…but I will give it another several months…just in case you make less than the $1540.

---

[11] This report is in substantially the same form as the report produced in this matter.

*See* Gallagher Decl. at ¶ 17, Exh. H at p. 000035 (ellipses in original). This email demonstrates ongoing payments from the firm to Ms. Frazier during the time frame that the call on which this action is premised was made to ERC. Likewise on February 12, 2018, Ms. Frazier wrote Mr. Rephen requesting a loan of $600. Mr. Rephen wrote back and confirmed that a check in that amount would be sent on the same date. *Id.* at ¶ 17, Exh. H at p. 000019. This check was sent the day before Ms. Frazier voluntarily provided sworn testimony to the Rephen firm to oppose summary judgment while simultaneously refusing to comply with this Court's subpoena. *See* Mot. to Compel (DE 16) at 2.

Additionally, Ms. Frazier received in-kind compensation from the Rephen Firm. In preparing to depose Ms. Frazier, counsel for ERC discovered a website advertising credit repair services provided by Ms. Frazier, hosted at the domain, Loyaltycreditrepair.com. *See* Decl. of R. Rivera at ¶ 5-11.[12] This website falsely advertised that Ms. Frazier is an attorney who provides credit repair services. *Id.* This website includes Ms. Frazier's email address, telephone number, and fax number. Frazier Depo. at 205:24-209:14. Following up on publicly available information, ERC sent a document subpoena to GoDaddy.com, LLC, which provided responsive documents detailing the ownership and account activity of the website. These documents clearly disclosed that the website's domain name was registered in the name of M. Harvey Rephen & Associates, P.C., was directly purchased by Mr. Rephen, himself, on an account used to purchase domains and maintain several other websites related to the Rephen Firm and his practices. Gallagher Decl. at ¶ 14-15, Exh. G. These documents further showed that Mr. Rephen called to have this website removed from the Internet two days after ERC took Ms. Frazier's deposition and disclosed that ERC knew of the website. *Id.*

---

[12] A true and correct copy of the Rivera Declaration and its exhibits is attached to the declaration of S. Gallagher as Exhibit F.

Further, Ms. Frazier has taken a financial interest in at least one claim she has generated for the Rephen Firm. Ms. Frazier had Imelda Alcivar sign a document titled Contractual Agreement, by which Ms. Alcivar promised to share any recovery from "any FDCPA or FCRA case" with Ms. Frazier and authorized Mr. Rephen to write checks to Ms. Frazier on her behalf. *See* Transcript of evidentiary hearing in *Alcivar v. Enhanced Recovery Company, LLC*,[13] attached as Exhibit I to the Declaration of S. Gallagher [hereinafter *Alcivar* Tr.] at 23:17-:23, Exh. 2.

Moreover, Ms. Frazier's testimony demonstrates that she is a conduit for communication between the Rephen Firm and its clients. Ms. Frazier testified she sent the recording of her call with ERC concerning Mr. Eisner's account to the Rephen Firm. Frazier Depo. at 156:25-157:23.[14] Mr. Eisner confirmed he first communicated with the Rephen Firm through Ms. Frazier. Eisner Depo. at 30:12-31:3. He confirmed any signed agreement he may have with the Rephen Firm was provided to him by Ms. Frazier. *Id.* at 32:14-:22. Mr. Eisner also stated that he believed he was first informed he had a potential claim against ERC by Ms. Frazier. *Id.* at 78:10-79:9. Moreover, Mr. Eisner testified that Ms. Frazier contacted him regarding scheduling the deposition and ensuring that he had the time and location information for the deposition. *Id.* at 82:8-:25. All of these communications led Mr. Eisner to the understandable conclusion that Ms. Frazier has an affiliation with the Rephen Firm. *Id.* at 83:1-84:6.

Further, it appears the Rephen Firm is able to exert influence over Ms. Frazier regarding whether she will comply with subpoenas and court orders. As detailed in ERC's Motion to Compel, filed on April 2, 2018, ERC served a subpoena on Ms. Frazier for all documents that

---

[13] No. 1:17-cv-2275 (E.D.N.Y. Aug. 23, 2018).

[14] A true and correct transcript of the deposition of Brad Eisner is attached to the declaration of Scott Gallagher as Exhibit D.

she had concerning Ms. Rosado's claims. Motion (DE 16). ERC served a similar subpoena regarding the claims of Imelda Alcivar. ERC did not receive any objections or a response to either subpoena from Ms. Frazier by the date for compliance listed in the subpoenas. ERC then sent a letter to Ms. Frazier to confer regarding Ms. Frazier's failure to respond and this too went unanswered. Finally on January 24, almost a full month after objections or documents were due, Ms. Frazier, emailed ERC's counsel to state she had a family crisis and would not be available until further notice and asked that ERC's counsel stop contacting her concerning the subpoenas. Motion (DE 16) at Exh. D. One week later, Ms. Frazier responded to a follow-up email stating she was sick and scheduled for surgery on February 12, 2018. *Id.* at Exh. E.

Despite refusing to respond to ERC's subpoena issued from this Court on the basis that she was sick and scheduled for surgery on February 12, Mr. Geller filed an affidavit bearing Ms. Frazier's notarized signature dated February 13 in the *Eisner* matter. *See Eisner v. Enhanced Recovery Co.*, *LLC*, No. 1:17-cv-1240-LDH-ST, DE 22 at 7-8 (E.D.N.Y. Feb. 14, 2018). Mr. Geller filed this affidavit, which contained statements contradicting her prior deposition testimony and contradicting Mr. Eisner's testimony about matters within his exclusive, personal knowledge, due in part to the fact that Mr. Eisner had become unresponsive. *See Eisner*, No. 1:17-cv-1240-LDH-ST, DE 23 at 2 (E.D.N.Y. Feb. 28, 2018); Tr. of Pre Motion Conference (Apr. 20, 2018).[15] The fact that Ms. Frazier was willing to give Mr. Geller a sham affidavit, for which she was under no legal obligation, on the day following her surgery is a clear indication that the Rephen Firm exerts a material amount of control over Ms. Frazier.[16] This is especially clear considering that Ms. Frazier was concurrently refusing to comply with her legal obligation to respond to this Court's subpoena. After February 13, though presumably feeling better from

---

[15] A true and correct copy of the transcript is attached hereto as Exhibit B.
[16] As noted above, Ms. Frazier signed this affidavit one day after the Rephen firm informed her that a check for $600 had been sent to her.

her surgery, Ms. Frazier continued to ignore her obligations to respond to the subpoena and, on February 26, her husband wrote to ERC to inform it that Ms. Frazier had had major surgery and will not be communicating until she is healthy to do so. Mot (DE 16) at Exh. F.

Thereafter, although this Court's order compelled Ms. Frazier to produce responsive documents and informed her that her failure to do so could lead to a finding of contempt and imposition of sanctions, Ms. Frazier still failed to produce any responsive documents. These refusals to respond in the face of being held in contempt and having to pay sanctions, further buttress the conclusion that Ms. Frazier was discouraged from responding and providing ERC with documents or deposition testimony in this matter.

Additionally, ERC has sought to depose a corporate representative of the Rephen firm concerning its relationship with Ms. Frazier, as well as Mr. Rephen personally on the same subject. Mr. Rephen has asserted his Fifth Amendment privilege against self-incrimination in an attempt to avoid sitting for deposition on this topic and, through counsel, has made clear that the privilege will be invoked as to any questions concerning the relationship between Ms. Frazier, on the one hand, and Mr. Rephen or his firm, on the other hand. *See Eisner v. Enhanced Recovery Co., LLC*, No. 1:17-cv-1240 (LDH) (ST), Dkt. 38 (E.D.N.Y. Sept. 4, 2018).[17] Given that Mr. Rephen would presumably deny the relationship if one were not present, ERC is entitled to an adverse inference that there is an improper relationship between the firm and Ms. Frazier as it relates to the Plaintiff's FDCPA claim.[18] As supported by other evidence cited throughout, ERC respectfully requests that the Court find that the Rephen Firm employed Ms. Frazier to call collectors, manufacture claims against those collectors under the Act, and refer those manufactured claims to the firm.

---

[17] A true and correct copy of Mr. Rephen's letter is attached to the declaration of S. Gallagher at Exhibit J.
[18] *See, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Li-Butti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997); *S.E.C. v. Suman*, 684 F. Supp. 2d 378, 386 (S.D.N.Y 2010).

c.  **The history of the claims brought by multiple plaintiffs represented by Ms. Rosado's counsel further underscore the bad faith in instituting the instant litigation.**

i.  **Claims filed against ERC**

As this Court has been made aware, this matter is but one of several that Mr. Geller has filed against ERC concerning a similar fact pattern. Mr. Geller, as counsel for the Rephen Firm, has filed ten such matters against ERC over the past two and a half years. Gallagher Decl. at ¶ 20-21. In each matter, Mr. Geller swears under penalty of perjury that he believes the contents of the complaint to be true due to the plaintiff's documents in his possession. The complaints allege that a "credit repair professional," usually Ms. Frazier, attempted to dispute an account on which ERC was collecting over the phone, but that ERC refused to accept such verbal dispute.[19] In each of these cases, the specialist called ERC with the plaintiff on the line, asked leading questions concerning the account, credit reporting, and how ERC would accept a dispute of the account, all the while surreptitiously recording the conversation. Gallagher Decl. at ¶ 21.

These ten matters have, almost without exception, followed a similar path. Upon filing suit seeking purported actual damages of $25,000, Mr. Geller seeks to settle the matters with ERC for a fraction of that amount—well within ERC's cost to defend. If ERC balks at settlement and serves discovery or seeks to take the plaintiff's deposition, Mr. Geller has difficulty reaching his client and then offers to stipulate to dismiss the claims, with prejudice, if ERC forgoes a claim for fees. Gallagher Decl. at ¶ 23.

---

[19] *See Eisner v. Enhanced Recovery Company, LLC*, 1:17-cv-01240-LDH-ST (E.D.N.Y.); *Alcivar v. Enhanced Recovery Company, LLC*, 1:17-cv-2275-ILG-LB (E.D.N.Y.); *Haynes v. Enhanced Recovery Company, LLC*, 1:16-cv-02971-DLI-RLM (E.D.N.Y.); *Ignacio v. Enhanced Recovery Company, LLC*, 1:17-cv-05833-WFK-SMG (E.D.N.Y.); *Mahmud v. Enhanced Recovery Company, LLC*, 1:17-cv-03638ILG-VMS (E.D.N.Y.); *Moreno v. Enhanced Recovery Company, LLC*, 1:17-cv-04590-WFK-SJB (E.D.N.Y.); *Ullah v. Enhanced Recovery Company, LLC*, 1:17-cv-04876-KAM-VMS (E.D.N.Y.); *Borbon v. Enhanced Recovery Company, LLC*, No. 000960 (N.Y. Civ. Ct. Bronx Cnty.); *Perez v. Enhanced Recovery Company, LLC*, No. 06988 (N.Y. Civ. Ct. N.Y. Cnty.).

Unfortunately, Mr. Eisner is the only opposing litigant represented by the Rephen Firm that ERC has been able to fully depose. His testimony, however, shows why Mr. Geller has had such difficulty in reaching his clients during the course of litigation. Mr. Eisner indicated that Ms. Frazier, a family friend, approached him concerning his credit problems and gratuitously offered to help him. Eisner Depo. at 22:14-:21, 34:3-:11. Ms. Frazier called ERC with Mr. Eisner on the line, without informing either Mr. Eisner or ERC that she was recording the telephone call. *Id.* at 54:23-55:20, 96:19-97:1.   During the call, Ms. Frazier lodged a dispute on Mr. Eisner's behalf with ERC concerning an account about which she had not spoken to Mr. Eisner. *Id.* at 48:6-:9.

After the call, Ms. Frazier sent the call recording to the Rephen Firm and thereafter told Mr. Eisner that a he had a claim under the Act. *Id.* at 78:5-79:9. The Rephen Firm filed a lawsuit on Mr. Eisner's behalf despite Mr. Eisner never affirmatively authorizing it to do so. *Id.* at 79:10-80:10. Mr. Eisner stated he was not informed of the requirements of proceeding with litigation, the potential benefits of litigation, or that he might be held liable for paying costs of litigation. *Id.* at 80:11-81:9, 88:8-:23.

During litigation, the Rephen Firm did not ask Mr. Eisner to meaningfully participate in responding to discovery requests. *See, e.g.*, *id.* at 84:12-87:3, 103:6-104:19. Moreover, it is clear from the Responses to Requests for Admissions that Mr. Eisner did not assist in preparing answers. For example, although it was Ms. Frazier that recorded the telephone conversation with ERC, and Mr. Eisner was unaware of this fact, the responses admit that he recorded the conversation and deny that someone acting on his behalf recorded it. Gallagher Decl. at ¶ 12, Exh. E.  Further, although Mr. Eisner stated that he never sent anything in writing to ERC to dispute the account, the responses deny that he never sent ERC a written dispute of the account.

*Id.* Thus, despite not having ***any*** evidence to support these denials, not requesting Mr. Eisner's help in responding, and not informing Mr. Eisner of his obligations and potential responsibilities in the matter, the Rephen Firm served responses creating a clear entitlement for ERC to seek fees from Mr. Eisner under Rule 36.

Thereafter, Mr. Eisner was informed that he had to submit for deposition and was given insufficient notice to appear. Eisner Depo. at 87:8-88:14. Mr. Eisner did not understand when the lawsuit was filed that he would have to personally appear and answer questions under oath. *Id.* at 88:15-:23. Mr. Eisner testified that the litigation process was stressful, stating: "I expected the call and I expected to be done after that. But now I have to come here and deal with this and miss work." *Id.* at 90:4-:7. Mr. Eisner further testified that if he had known of the obligations imposed on him in the litigation process, he would have rethought his failure to object to the filing of the lawsuit. *Id.* at 88:21-89:8.

On August 23, 2018, Judge Bloom held an evidentiary hearing in the *Alcivar* matter after ERC filed a motion for involuntary dismissal for lack of prosecution. Judge Bloom stated on the record that the court held the hearing to "inquire about how this case came to be and where and when you lost contact with your lawyer." *Alcivar* Tr. at 5:16-:19. During the hearing, Ms. Alcivar testified she met with Ms. Frazier to have Ms. Frazier repair her credit. *Id.* at 7:23-8:8. Ms. Frazier provided Ms. Alcivar with paperwork to sign, including the retainer agreement with the Rephen Firm, and put Ms. Alcivar in touch with the Rephen firm. *Id.* at 8:20-10:12, Exh. 1. Ms. Frazier purportedly explained the purpose of the retainer agreement to Ms. Alcivar as providing Ms. Frazier permission to repair her credit. *Id.* at 10:13-11:10. Ms. Frazier also had Ms. Alcivar sign an agreement that any money received by Ms. Alcivar would be split with Ms. Frazier. *Id.* at 23:17-:23, Exh. 2.

Ms. Alcivar testified she did not know when she signed the retainer agreement that an action would be filed on her behalf against ERC. *Id.* at 32:3-:6. She further testified that she was unaware a case had been filed against ERC on her behalf until June 19, 2018—a full year after the Rephen Firm filed the Complaint against ERC, **and two months after it offered to dismiss her claims with prejudice**. *Id.* at 24:2-:7. Throughout the pendency of Ms. Alcivar's case against ERC, Ms. Frazier remained the primary line of communication with the Rephen Firm. *Id.* at 21:4-:12. In fact, Ms. Alcivar testified that she only spoke with Mr. Rephen when she was with Ms. Frazier and did not feel comfortable even speaking with Mr. Geller on the telephone. *Id.* at 15:13-:24, 16:9-:15, 27:20-:22.

Ms. Alcivar further testified she did not actually dispute the ERC account. Ms. Alcivar informed Ms. Frazier that she admitted incurring the accounts listed on her credit report, including the account that ERC sought to collect. However, Ms. Frazier proceeded to dispute the accounts listed on the credit report, purportedly on Ms. Alcivar's behalf. *Id.* at 19:12-20:13.

Moreover, Ms. Alcivar's counsel offered to dismiss her action, with prejudice, if ERC would not seek sanctions against the Rephen Firm, though Ms. Alcivar did not provide informed consent to do so. Ms. Alcivar testified that she was not contacted to agree to dismiss her case. *Id.* at 24:8-:10. Moreover, Ms. Alcivar testified that she was never advised that dismissing her claims with prejudice would forfeit any legal right to pursue her action. *Id.* at 24:19-:22. Despite this, Mr. Geller wrote counsel for ERC on April 12, 2018, asking if ERC would agree to dismissal with prejudice of Ms. Alcivar's and Ms. Rosado's claims with each party to bear its own fees. Gallagher Decl. at ¶ 8.

Ms. Alcivar's testimony also demonstrates that, like Mr. Eisner, Ms. Alcivar did not participate in responding to ERC's discovery requests directed to her. As noted above, Ms.

Alcivar was unaware that a suit had been filed on her behalf until June 2018, two months after discovery closed in the matter. Moreover, Ms. Alcivar testified that she first met with Mr. Geller in February 2018 to discuss repairing her credit. Evidentiary Tr. at 11:11-12:3.[20] This meeting occurred one month after ERC received discovery responses from Mr. Geller concerning Ms. Alcivar's claims. Gallagher Decl. at ¶ 16.

ERC believes that Ms. Rosado's testimony would disclose similar facts concerning her relationship, or lack thereof, with her attorneys in this matter. Accordingly, as discussed in part V, below, ERC respectfully requests that the Court hold an evidentiary hearing on the instant motion.

### ii.   Claims filed against other collectors

In addition to the ten cases filed by the Rephen firm against ERC asserting purported spurious technical violations of the Act concerning calls initiated by credit repair professionals, ERC is aware of at least 23 such matters filed against other collectors.[21] These other collectors have experienced a similar pattern of behavior concerning the offer to dismiss lawsuits once the Rephen Firm receives opposition to its settlement demands. *See, e.g.*, *Paul v. Credit Collection Servs.*, No. 2:17-cv-4060-SJF-AYS Dkt. 21 (E.D.N.Y. Mar. 2, 2018). In *Paul*, the defendant filed a letter at Judge Feuerstein's request detailing several actions filed by the Rephen Firm in which Ms. Frazier, or another credit repair professional, has been involved and where the plaintiff has refused to comply with discovery obligations. *Id.*

Additionally, as noted in Part III above, Ms. Rosado's attorneys have filed multiple claims that have been dismissed on the grounds that the alleged misrepresentations at issue were made to intermediaries and not consumers. Despite the dismissal of previous similar claims, the

---

[20] Notably, Mr. Geller denies ever meeting with Ms. Alcivar. *See* July 19 Tr. At 12:15-:22.
[21] Attached hereto as Exhibit C is a schedule of matters, of which ERC is aware, filed by the Rephen Firm against ERC and other collectors concerning such claims.

Rephen firm continued to file and maintain suits against ERC and other collectors premised on such communications.

The pattern of conduct undertaken by Ms. Rosado's counsel in the numerous other actions the Rephen Firm has filed against collectors raising similar claims demonstrates that this action was not brought in good faith. It is clear that the firm had no intention of pursuing this action to a conclusion, nor any reasonable belief that it would prevail on the merits. Rather, this action, like these other matters, was filed asserting a claim to $25,000 in actual damages in the hopes that it could harass the collector into a quick settlement for a fraction of that amount.

**V.   This Court should hold an evidentiary hearing and require the attendance of Ms. Rosado, Ms. Frazier, Mr. Geller, and Mr. Rephen.**

ERC respectfully requests that this Court hold an evidentiary hearing to develop a full record of how this matter came to be filed against ERC and the relative participation of Ms. Rosado in this action as compared to the third party, Tawanda Frazier. As noted above, ERC has sought this information by seeking to depose Ms. Rosado and seeking documents and testimony from Tawanda Frazier in this action. These efforts have been thwarted by the refusal of Ms. Rosado, or her counsel, to comply with her discovery obligations in this matter and Ms. Frazier's refusal to comply with the Court's subpoena or the Court's order compelling Ms. Frazier to produce documents in this matter.

Additionally, as this Court is aware, ERC has sought to depose Mr. Rephen and a corporate representative of the Rephen Firm, pursuant to the court's direction in the *Eisner* matter, to determine the nature and extent of the relationship between the Rephen Firm and Ms. Frazier. The firm has twice failed to comply with ERC's deposition subpoena without timely serving any objections to the subpoena and ERC has twice moved to compel the firm to produce a corporate

representative.[22] While the *Eisner* court granted ERC's initial motion to compel, the firm refused to comply with that order. The *Eisner* court granted ERC's second motion to compel on September 5, over the Rephen Firm's active opposition and has required Mr. Rephen to appear for deposition on or before October 1, 2018.[23]

Further, on August 23, ERC served Mr. Rephen with a personal subpoena to be deposed on September 12. On September 4, Mr. Rephen filed a letter with the *Eisner* court seeking to be excused from complying with the deposition subpoena because he intends to invoke his Fifth Amendment privilege against self-incrimination in response to each of ERC's questions concerning his, and his firm's, relationship with Ms. Frazier. *See Eisner v. Enhanced Recovery Co., LLC*, No. 1:17-cv-1240 (LDH) (ST), Dkt. 38 (E.D.N.Y. Sept. 4, 2018). Although the Court is permitted to draw an adverse inference based on Mr. Rephen's refusal to be deposed concerning his firm's relationship with Ms. Frazier,[24] ERC believes that an evidentiary hearing before the Court would permit ERC to question Mr. Rephen and allow the Court to determine if his assertion of the privilege is well-founded.

Moreover, although ERC has successfully deposed Ms. Frazier in the *Eisner* matter, documents recently produced by the Rephen Firm demonstrate that Ms. Frazier was not truthful in her testimony. Additionally, these documents demonstrate that Ms. Frazier did not fully comply with ERC's subpoena to produce documents in that matter. An evidentiary hearing would permit ERC an opportunity to examine Ms. Frazier concerning the content of these

---

[22] On this basis, ERC has twice moved the Court to extend its deadline to submit the instant motion for attorneys' fees to permit time to depose Mr. Rephen.

[23] The court's order also held that the Rephen Firm must compensate ERC for eleven categories of costs and attorneys' fees related to attempting to depose the firm as monetary sanctions for the failure to comply with the court's orders.

[24] *See, e.g.*, *Baxter*, 425 U.S. at 318; *Li-Butti*, 107 F.3d at 124; *Suman*, 684 F. Supp. 2d at 386.

documents, as well as her reasons for failing to comply with this Court's order and additionally allow the Court to judge Ms. Frazier's veracity.

An order awarding sanctions against a party or lawyer must be supported with specific findings of fact to support the order. An evidentiary hearing is appropriate where there are disputed issues of fact or credibility for the court to decide in making its fact-finding for a sanctions order. *See Int'l Shipping Co.*, 875 F.2d at 392. ERC is entitled to receive discovery to prove its civil claims. ERC asserted an entitlement to fees under the Act in its answer, yet has been prevented from obtaining any real discovery in support of this claim by the Rephen Firm and persons in its control.

Accordingly, ERC requests the Court hold an evidentiary hearing to supplement the ample direct and circumstantial evidence of bad faith and improper purpose in bringing the instant action and direct evidence of an improper relationship between Ms. Frazier and the Rephen firm, so that any sanctions award is supported in accordance with Second Circuit law. Moreover, such a hearing would permit the court to reach a determination of the extent to which Ms. Rosado or her counsel should be held responsible for satisfying any sanctions awards.

**VI.    Conclusion**

This action was filed against ERC without any support in fact or law. Moreover, Ms. Rosado's action is one of several matters filed by her attorneys against ERC, and other collectors, based on calls initiated by Ms. Frazier, a person employed by the Rephen Firm and who also takes a direct financial interest in the subject matter of litigation.

This action was filed in bad faith and for an improper purpose. These claims have been manufactured for the purpose of creating potential settlement recoveries against ERC and similarly situated collectors. Accordingly, ERC requests that the Court enter an Order requiring

24

Ms. Rosado, her counsel, or both, to pay ERC's attorneys' fees and costs incurred in defending this action, approximately $20,000 as of the date of this filing.

SMITH, GAMBRELL & RUSSELL, LLP


By: _____*/s/ Scott S. Gallagher*_____

Nicole Haff
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800

and

Scott S. Gallagher
50 North Laura St., Suite 2600
Jacksonville, Florida 32202
Tel: (904) 598-6111
Fax: (904) 598-6211
sgallagher@sgrlaw.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant*

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 7, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to:

> Edward B. Geller, Esq.
> EDWARD B. GELLER, ESQ., P.C. OF COUNSEL TO
> M. HARVEY REPHEN & ASSOCIATES, P.C.
> 15 Landing Way
> Bronx, New York 10464
> epbh@aol.com

_/s/ Scott S. Gallagher_
Attorney

26