UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
TAMARA ROSADO, :
:
                      Plaintiff, :
: 17-CV-5920 (VSB)
      - against - :
: **OPINION & ORDER**
:
ENHANCED RECOVERY CORPORATION, :
:
                      Defendant. :
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/26/2019

Appearances:

Edward B. Geller
Edward B. Geller, Esq., P.C.
Bronx, New York
*Counsel for Plaintiff*

Edward Joseph Heppt (New York, New York)
Scott S. Gallagher (Jacksonville, Florida)
Smith Gambrell & Russell, LLP

Nicole Haff
Romano Law PLLC
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Tamara Rosado filed this lawsuit against Defendant Enhanced Recovery Corporation ("ERC"), alleging abusive, deceptive, and unfair debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. On June 7, 2018, I dismissed the action with prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Before me is ERC's motion seeking the attorney's fees it incurred in connection with this lawsuit. For the reasons that follow, ERC's motion is DENIED.

## I. Factual and Procedural Background

On May 4, 2017, Plaintiff filed her Complaint in the Civil Court of the City of New York, Bronx County, New York, alleging that ERC had violated the FDCPA. (*See* Compl.)[1] In her Complaint, Plaintiff alleged that on March 30, 2017, Plaintiff placed a phone call to ERC, along with credit repair specialist Tawanda Frazier, to dispute the charges on Plaintiff's T-Mobile account that ERC sought to collect. (*Id.* ¶¶ 10–15.) When Ms. Frazier asked the ERC representative who was on the call whether she could dispute the debt over the phone or whether the dispute needed to be made in writing, the representative responded that the debt must be disputed in writing. (*Id.* ¶¶ 15–16.) Plaintiff alleged that ERC's refusal to accept her verbal dispute violated multiple provisions of the FDCPA, namely 15 U.S.C. §§ 1692e(8) and (10), and § 1692f.

ERC removed the action to this Court on August 4, 2017. (Doc. 4.) On November 17, 2017, I held a pretrial conference in the matter and entered a Case Management Plan and Scheduling Order. (Doc. 12.) Despite ERC's attempts to conduct discovery, Plaintiff repeatedly stalled and refused to submit to discovery, including by failing to timely respond to ERC's requests to admit and by refusing to submit to a deposition or to schedule the deposition of Ms. Frazier. (*See* Doc. 25; Gallagher Decl. ¶ 3.)[2] On May 23, 2018, ERC requested that I dismiss the lawsuit with prejudice or, in the alternative, grant ERC leave to file a motion to dismiss and for summary judgment. (Doc. 22.) On May 24, 2018, Plaintiff's counsel responded and explained that Plaintiff "does not wish to move forward with this matter." (Doc. 23, at 2.) On

---

[1] "Compl." or "Complaint" refers to the Complaint filed by Tamara Rosado in the Civil Court of the City of New York, Bronx County, New York, on May 4, 2017. (Doc. 4-1.)

[2] "Gallagher Decl." refers to the Declaration of Scott Gallagher, dated September 7, 2018, with attachments. (Doc. 37.)

June 7, 2018, I dismissed the action with prejudice pursuant Federal Rule of Civil Procedure 41(b), noting that dismissal was warranted as a result of "Plaintiff's lack of cooperation throughout discovery, her disinterest in continuing to litigate, and the Court's interest in efficiently moving the case forward." (Doc. 25.) I denied ERC's request for attorney's fees pursuant to Rule 41, (*id.*); however, I subsequently granted ERC leave to file a motion to recover fees pursuant to § 15 U.S.C. 1692k(a)(3), although I advised ERC that I "t[ook] no position at th[at] time with regard to the merits of any such motion," (Doc. 27). ERC filed the instant motion for attorney's fees on September 7, 2018, (Doc. 35), along with a memorandum of law, (Doc. 36), and declarations with exhibits in support, (Docs. 37–38). Plaintiff filed her opposition on October 12, 2018, (Doc. 39), and ERC filed its reply on October 19, 2018, (Doc. 41).

## II. <u>Discussion</u>

ERC contends that both Plaintiff and her counsel[3] should be sanctioned under 28 U.S.C. § 1927, the Court's inherent power, and/or 15 U.S.C. § 1692k for filing the instant lawsuit.[4]

### A. *Applicable Law*

Courts have "discretion in deciding whether to impose sanctions under 28 U.S.C. § 1927 and the Court's inherent power." *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 116

---

[3] ERC appears to seek sanctions not only against Edward B. Geller, Plaintiff's counsel of record, but also against M. Harvey Rephen & Associates, P.C., a law firm with which Mr. Geller is associated. (*See* Doc. 5 (notice of appearance for "Edward B. Geller, Esq., of Edward B. Geller, Esq., P.C., Of Counsel to M. Harvey Rephen & Associates, P.C.").) A court may sanction a law firm under § 1927 for the acts of its attorneys. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147–48 (2d Cir. 2012) (concluding that § 1927 permits an award "against the firm as a whole for the actions of various lawyers" (internal quotation marks omitted)).

[4] ERC also argues that Plaintiff's counsel may be sanctioned pursuant to Federal Rule of Civil Procedure 11. However, given the procedural posture of the case, I find that Rule 11 is not available as a source of potential sanctions. Plaintiff originally filed this action in state court and ERC removed the matter to federal court. (*See* Doc. 4.) As a result, "at the time the complaint was signed [R]ule 11 simply did not apply" and I lack the "authority to give it retrospective application." *Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir. 1987) (finding that Rule 11 did not apply to complaint initially filed in state court and explaining that, "[R]ule 11 deals exclusively with the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit, and imposes no continuing duty on the parties or their attorneys" (internal quotation marks omitted)).

F. Supp. 3d 349, 360 (S.D.N.Y. 2015); *see also Huebner v. Midland Credit Mgmt.*, 897 F.3d 42, 53 (2d Cir. 2018). Under 28 U.S.C. § 1927, any attorney in federal court "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To impose a fee award pursuant to § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (internal quotation marks omitted). Courts in this circuit construe the statute "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Mone v. C.I.R.*, 774 F.2d 570, 574 (2d Cir. 1985) (internal quotation marks omitted). Where sanctions are imposed, courts must make factual findings with "a high degree of specificity." *Scrilla Hill Entm't Inc. v. Dupree*, No. 16-CV-490 (JMF), 2016 WL 5817064, at *4 (S.D.N.Y. Oct. 5, 2016) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). These safeguards seek to ensure that "fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Dow*, 782 F.2d at 344.

Federal courts also retain the "inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citation omitted). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim

4

was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (citation omitted). Therefore, "[i]n practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Id.* at 144 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

The FDCPA also permits courts to sanction litigants for filing lawsuits "in bad faith and for the purpose of harassment." 15 U.S.C. §1692k(a)(3). The Supreme Court has held that this provision of the FDCPA "is best read as codifying a court's pre-existing authority to award both attorney's fees and costs." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).

**B.** *Application*

In order to impose sanctions under either 28 U.S.C. § 1927 or the Court's inherent power, which is codified under 15 U.S.C. §1692k(a)(3), I must find that "Plaintiff and/or Plaintiff's counsel both acted in bad faith and brought a claim without a colorable basis." *Abreu v. Receivable Collection Servs., LLC*, No. 18-CV-04103 (PKC) (LB), 2019 WL 1876722, at *2 (E.D.N.Y. Apr. 26, 2019) (citing *Enmon*, 675 F.3d at 143).

I first examine whether there is a "colorable basis" for Plaintiff's claims. "[A] claim is 'entirely without color when it lacks any legal or factual basis.'" *Enmon*, 675 F.3d at 143 (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999)); *see also Bowman Imp./Exp., Ltd. v. F.J. Elsner & Co. N. Am.*, No. 02 Civ. 3436(JGK), 2003 WL 21543522, at *2 (S.D.N.Y. July 9, 2003) (declining to award sanctions pursuant to § 1927 where claim was not "objectively baseless"). While I find that Plaintiff's claims were weak ones—

5

which Plaintiff ultimately declined to pursue, perhaps in recognition of this weakness—I cannot conclude that they lacked any factual or legal basis.

Factually, Plaintiff alleged that she sought credit assistance from Ms. Frazier, (Compl. ¶ 10), and that Ms. Frazier then placed a call to ERC, with Plaintiff on the line to provide her authorization for Ms. Frazier to speak on her behalf, (*id.* ¶¶ 11–12). When the ERC representative informed Ms. Frazier that ERC had a T-Mobile account in Plaintiff's name, Ms. Frazier responded that Plaintiff wished to dispute the account due to an incorrect balance. (*Id.* ¶¶ 14–15.) When asked whether the dispute could be made orally, the representative responded that the account must be disputed in writing. (*Id.* ¶ 16.) Plaintiff alleged that through this interaction, ERC violated the FDCPA in three respects: First, ERC violated 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." (*See* Compl. ¶ 19.) According to Plaintiff, ERC violated this provision by refusing to accept Plaintiff's dispute over the phone and instead requiring her to proceed in writing. (*Id.* ¶ 20.) Plaintiff also alleged that ERC violated 15 U.S.C. § 1692f (which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt") by "unfairly implement[ing] a policy which prevents, rejects or refuses to accept verbal consumer disputes and states that a written statement is required." (Compl. ¶ 22.) Finally, Plaintiff alleged that ERC violated § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." (*See* Compl. ¶¶ 23–24.)

ERC does not appear to dispute the veracity of several of Plaintiff's factual allegations, including that (1) the telephone call at issue occurred on March 30, 2017; (2) Plaintiff was on the

telephone along with Ms. Frazier during the March 30, 2017 call; and (3) the ERC representative failed to unequivocally accept Plaintiff's dispute over the phone. ERC concedes that debt collectors are "required to accept verbal disputes to trigger certain protections under the [FDCPA]," (ERC Reply 2),[5] but insists that a letter that ERC sent to Plaintiff on March 31, 2017 confirms that ERC properly accepted her dispute over the phone. That letter states, in pertinent part:

> This will acknowledge that, based on information you provided to our office, your account has been placed in a hold status and that collection efforts have ceased at this time. . . . Pursuant to 15 U.S.C. § 1692g, we are also required to notify you of the following:
>
> 1. Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.
>
> 2. If you notify our office below in writing within thirty (30) days of your receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of any judgment that may be of record against you. We will mail the verification or copy of the judgment to you.

(Doc. 38-2.) This notice does not necessarily refute Plaintiff's assertion that ERC "refused to take [her] dispute over the phone." (Compl. ¶ 20.) Although the notice advises Plaintiff that her "account has been placed in a hold status and that collection efforts have ceased at this time," the notice also suggests that Plaintiff was required to do more to dispute the debt—specifically, the notice informs Plaintiff that if she failed to dispute the debt within 30 days of receiving the notice, the debt would be "assumed to be valid." (Doc. 38-2.) The notice does not expressly state the form in which the dispute must be made, but strongly suggests that any dispute must be submitted in writing. (*See id.* (explaining steps ERC would take if Plaintiff notified ERC "in

---

[5] "ERC Reply" refers to Enhanced Recovery Company, LLC's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Attorneys' Fees, filed October 19, 2018. (Doc. 41.)

7

writing . . . that the debt, or any portion thereof, is disputed").)

ERC correctly points out that certain of the FDCPA's protections are only triggered by disputing a debt in writing. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Debtors can protect certain basic rights through an oral dispute, but can trigger a broader set of rights by disputing a debt in writing."). However, the Second Circuit has established that other, more fundamental protections—including a consumer's ability pursuant to § 1692g(a)(3) to dispute "the validity of the debt"—are triggered verbally. *See Hooks*, 717 F.3d at 286 ("The right to dispute a debt is the most fundamental of those set forth in § 1692g(a), and it was reasonable to ensure that it could be exercised by consumer debtors who may have some difficulty with making a timely written challenge."). By advising Plaintiff that more was required in order to dispute the validity of her debt, ERC's notice can be read to imply—at worst—that ERC had rejected Plaintiff's attempt to verbally dispute her debt during the March 30, 2017 phone call,[6] or—at best—that Plaintiff needed to take an additional step to formally lodge her dispute. Because Plaintiff had previously disputed her debt orally, the notice can also be read to require Plaintiff to take that additional step in writing.

Notwithstanding this fact, I find that Plaintiff's claims would have faced significant legal hurdles had she sought to continue litigating them. First, ERC points out that the telephone call at issue was initiated by Plaintiff and Ms. Frazier, and not by ERC. District courts in this Circuit have determined that "the FDCPA's protections are not triggered by communications by

---

[6] It is also worth noting that while ERC has produced hundreds of pages of exhibits from other cases in an effort to demonstrate Plaintiff's bad faith in filing this lawsuit, it has not produced the most crucial piece of evidence in this case—the recording of the March 30, 2017 phone call—which ERC acknowledges Plaintiff produced in discovery. (*See* Gallagher Decl. ¶ 5.) This omission is a glaring one, and I suspect that if the call recording were helpful to ERC, ERC would have provided a copy of the recording to the Court. For this reason, I find the *Huebner v. Midland Credit Management, Inc.* decision—on which ERC relies—distinguishable. *See* No. 14 Civ. 6046 (BMC), 2016 WL 6652722 (E.D.N.Y.), *aff'd*, 897 F.3d 42. In *Huebner*, the district court imposed sanctions only after reviewing the call recording and determining it did not reflect the allegations set forth in the complaint. *Id.* at *1.

8

someone other than the debt collector." *Sandoval v. I.C. Sys.*, No. 17-CV-3755 (DLI)(ST), 2018 WL 1582218, at *3 (E.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted); *see also Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp.2d 402, 411 (E.D.N.Y. 2012). Plaintiff's § 1692e(8) claim, which alleges that ERC failed to communicate to credit bureaus that Plaintiff requested that her account be disputed would confront the separate obstacle that courts within this Circuit have "found that this FDCPA provision does not create an affirmative obligation on debt collectors to update credit bureaus on the status of a consumer's debt, but merely requires that if debt collectors choose to discuss a consumer's debt with a third party, they must inform that third party of the disputed nature of the debt." *Abreu*, 2019 WL 1876722, at *6 (citing *Rogers v. Overton, Russell, Doerr & Donovan, LLP*, No. 16-cv-00784, 2017 WL 570811, at *3 (N.D.N.Y. Feb. 13, 2017)).

A final obstacle that Plaintiff would have faced is that she initiated the communication with ERC through a credit counselor and thus her suit is based on representations made by ERC to that third-party credit counselor—not directly to her. The Second Circuit has "not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 n.6 (2d Cir. 2015). However, the court has expressed "grave reservations" about extending the FDCPA's protections to certain categories of third parties—specifically, attorneys. *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ("[T]his Court's treatment of the FDCPA in other cases leads us to believe that alleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA."). Other courts within this Circuit have relied on *Kropelnicki*'s reasoning to decline to apply the FDCPA's protections to credit counselors. *See, e.g.*, *Sandoval*, 2018 WL 1582218, at *3 ("[G]iven the FDCPA's purpose in establishing certain rights for consumers, and the Second

9

Circuit's reluctance to extend the FDCPA's protections to third parties, this Court declines to extend the FDCPA's protections to credit counselors who, like attorneys, act as intermediaries." (internal quotation marks and citations omitted)). Having said that, at least one circuit has held that the FDCPA applies to communications with a debtor's representative. *See Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775 (7th Cir. 2007). The United States District Court for the Eastern District of New York held in *Abreu v. Receivable Collection Services, LLC*, that "if Plaintiff's claim was solely an attempt to persuade the Second Circuit to adopt the Seventh Circuit's holding in *Evory*, the Court would not have an adequate basis on which to issue sanctions." 2019 WL 1876722, at *5.[7]

Although I find that these obstacles would likely prove fatal to one or more of Plaintiff's claims, because the Second Circuit "has not squarely addressed" these issues, *id.*, I find that Plaintiff's claims are not so wholly without a legal or factual basis so as to trigger the imposition of sanctions, *see Enmon*, 675 F.3d at 143. As a result, I need not inquire further into Plaintiff's motives for bringing this lawsuit. *See id.* (requiring a showing that plaintiff's claims were both "without a colorable basis and . . . brought in bad faith"). I note, however, that although ERC has submitted voluminous exhibits, including deposition testimony, discovery responses, and retainer agreements from other parties in other lawsuits in an attempt to demonstrate bad faith, (*see generally* Gallagher Decl.), ERC has submitted minimal evidence specific to *this* lawsuit

---

[7] In evaluating a similar motion for fees, costs, and sanctions pursuant to 28 U.S.C. § 1927, the *Abreu* court deferred ruling on defendant's motion to permit the parties to brief the issue of whether plaintiff's FDCPA claim was meritless where it alleged that defendant "violated the FDCPA when it mistakenly told Plaintiff's representative that it would not report that Plaintiff disputed the debt directly to the credit bureaus" but where, later the very same day, "Defendant even called Plaintiff back to clarify that its original statement about Defendant not contacting the credit bureaus was mistaken." 2019 WL 1876722, at *6 (commenting that defendant would "very likely . . . not be liable under the FDCPA, under either the bona fide error defense or the implied requirement of materiality" (internal citations omitted)). The *Abreu* court ultimately declined to issue sanctions against plaintiff's counsel because the case had been removed from state court and "the potentially sanctionable conduct occurred in state court," as opposed to federal court. *Abreu v. Receivable Collection Servs., LLC*, No. 18-CV-04103 (PKC) (LB), 2019 WL 4140840, at *3 (E.D.N.Y. Aug. 29, 2019).

that would support ERC's assertions of bad faith.  To be clear, I am not condoning Plaintiff's counsel's alleged litigation tactics and ERC's allegations regarding counsel's conduct in other matters, if true, are indeed troubling.  However, here, where the action was dismissed with prejudice before any dispositive motions were filed or substantial discovery completed, I find that conducting a comprehensive inquiry into the circumstances underlying the filing of the Complaint—which has long since been dismissed—would be an imprudent use of limited judicial resources.

### III. Conclusion

For the foregoing reasons, Defendant's motion for attorney's fees is DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 35.

SO ORDERED.

Dated: September 26, 2019
New York, New York

Vernon S. Broderick
United States District Judge